```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                     )
SAAB 1 ENTERPRISES, INC.,            )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )     C.A. No. 13-599 S
                                     )
COLBEA ENTERPRISES, LLC;             )
MOTIVA ENTERPRISES, LLC; and         )
EASTSIDE ENTERPRISES, LLC,           )
                                     )
        Defendants.                  )
_____  )

**OPINION AND ORDER**

WILLIAM E. SMITH, Chief Judge.

This dispute involves the leasing, operation and servicing of gas stations located in Massachusetts and Rhode Island. Saab 1 Enterprises, Inc. ("Saab") has brought claims against Colbea Enterprises, LLC ("Colbea"), Motiva Enterprises, LLC ("Motiva") and Eastside Enterprises, LLC ("Eastside" and collectively with Colbea and Motiva, "Defendants") for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, conversion, and violations of Massachusetts and Rhode Island consumer protection law. Now pending is Defendants' Motion to Dismiss for failure to state a claim (ECF Nos. 7 and 14). For the reasons that follow, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

1

I.   Facts

Barely six months old and not yet past the motion to dismiss stage, this case has generated close to 300 pages of briefs, some 1300 pages of exhibits, and a panoply of last-minute, "emergency" motions seeking relief.  This need not have happened, as the dispute is relatively straight-forward.  The facts are summarized from the Second Amended Complaint[1] (ECF No. 27-3) and are not in dispute.

Saab is a Massachusetts corporation that operated a total of eleven Shell branded gas stations in Rhode Island and Massachusetts.  (Compl. ¶¶ 1, 7, 16.)  Nine of these stations were leased from Defendants, and Saab owned two of them outright.  (Id. at ¶ 16.)  Only the nine leased stations are immediately relevant.  Though somewhat unclear, the Complaint suggests that Colbea, Motiva and Eastside are all affiliated with Shell Oil Company.  (Id. at ¶¶ 2-4.)  Colbea, Motiva and Eastside are alleged to play various roles in the leasing and servicing of Shell branded stations.  Saab apparently entered into lease arrangements for the nine stations with Motiva.  (Id. at ¶ 13.)  Colbea and Eastside are "jobbers," meaning that they supply fuel to lessees like Saab at prices and quantities determined by Colbea.  (Id. at ¶¶ 9, 11, 17-19.)  Lessees must

---

[1] This document is captioned "Amended Complaint," but it is in fact the Second Amended Complaint.  References herein to the "Complaint" are to the Second Amended Complaint.

2

purchase fuel on these terms, and are not permitted to purchase from third parties. (Id. at ¶ 13.)

Acting as a jobber in 2011, Colbea significantly increased the price of the fuel that Saab was obligated to buy, such that the prices that Colbea charged were often higher than the retail prices that Saab's competitors charged at the pump. (Id. at ¶¶ 23-24.) When Saab approached Colbea about price adjustments, a Colbea manager insinuated that independent lessees would soon be forced out of business and all Shell branded stations in the area would be operated by Colbea and Eastside. (Id. at ¶ 27.)

No longer able to operate except at significant losses, Saab alleges that it was forced to cede control of two stations in Cranston and North Kingston, Rhode Island. (Id. at ¶ 28.) In connection with Saab's relinquishment of these stations, the parties executed a Mutual Termination Agreement and Release wherein the parties released each other from liability associated with the leasing and operation of those two stations (the "Rhode Island Release"). (See ECF No. 7-1.)

Later, Colbea refused Saab's tender of rent for the remaining stations. (Compl. ¶ 29.) This led to negotiations between the parties and the execution of a Settlement Agreement and General Release of Claims on November 30, 2012 (the "Settlement Agreement"). (Id. at ¶ 30.) The Settlement Agreement provided that Saab would return control of four of the

3

remaining seven stations to Defendants (the "Returned Stations"), would continue to operate the remaining three stations (the "Retained Stations"), and would receive a $200,000 fuel credit from Defendants in exchange for equipment belonging to Saab located at the Returned Stations.[2] (Id. at ¶ 33; see also Settlement Agreement, ECF No. 16-2.)

Saab alleges that Defendants failed to abide by the terms of the Settlement Agreement by failing to deliver the Retained Stations in operable condition and failing to pay the $200,000 fuel credit in exchange for Saab's equipment. (Compl. ¶ 36.) Saab alleges that Defendants never intended to abide by the terms of the Settlement Agreement, but rather fraudulently induced Saab to sign it in order to obtain control of the Returned Stations. (Id. at ¶ 39.)

This dispute, however, is not the only bout on the card. The three Retained Stations have been the subject of eviction proceedings in Massachusetts state court. There, Colbea alleged that Saab breached the applicable lease agreements by failing to pay rent in December 2012 and failing to operate the Retained Stations for a period of time during that same month. In a

---

[2] At approximately the same time that the parties executed the Settlement Agreement, they also executed a series of lease agreements, letter agreements, and retail sales agreements. (See ECF No. 21, Exs. B-F.) The Court has reviewed and considered these documents. For ease of reference, these ancillary documents are referred to collectively with the Settlement Agreement.

4

ruling issued on December 12, 2013, Judge Flynn of the Massachusetts District Court found that Saab had indeed breached the lease agreements and found that Colbea was entitled to possession of the Retained Stations.[3] (See ECF No. 30-1.)

II. Discussion

"In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)).

The Court must "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff." Sanchez, 590 F.3d at 41 (internal citation and quotation marks omitted). Nevertheless, "[t]hreadbare

---

[3] Saab represents that it was barred from raising as a defense Defendants' breach of the Settlement Agreement. See Mass. Gen. Laws ch. 239, § 8A. As such, and because breach of these lease agreements is not immediately at issue in this case, the ruling of the Massachusetts District Court has no preclusive effect on the matters before this Court.

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Defendants proffer a variety of arguments in favor of dismissal, but because of this case's tortured early goings, they are set forth in a total of three memoranda. (See ECF Nos. 14, 22, 28.) Rather than summarize them at the outset, the Court considers each argument, and Saab's responses thereto, in the context of the applicable count(s) of the Complaint.[4][5]

---

[4] The Court declines Saab's request to treat the Motion to Dismiss as a motion for summary judgment. While a motion to dismiss may be converted to a motion for summary judgment if the district court considers materials outside the pleadings, Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008), the Court concludes that the operative documents – namely the Settlement Agreement and the Rhode Island Release – are sufficiently referenced in the Complaint. See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) ("[W]e may properly consider . . . a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion [to dismiss] into one for summary judgment.") (internal citation and quotation marks omitted).

[5] Defendants seek dismissal of all counts with respect to Motiva and Eastside, arguing that the Complaint fails to state claims against those entities. In response, Saab urges the Court to pierce the corporate veil of Colbea in order to reach Motiva and Eastside. Piercing the corporate veil is an extraordinary measure undertaken in rare circumstances and only after an intensive factual inquiry. See Scott v. NG U.S. 1, Inc., 881 N.E.2d 1125, 1132 (Mass. 2008). While Saab has not made a compelling case for piercing the corporate veil, a review of the Complaint reveals that it asserts claims against Motiva and Eastside sufficient to survive a motion to dismiss. (See Compl. ¶¶ 2, 36, 46 et seq.)

6

A.  Count I – Declaratory Relief

Count I seeks declaratory relief that: (1) voids the Settlement Agreement due to a total failure of consideration and material breaches by Defendants; (2) reinstates all agreements between the parties prior to November 8, 2012; and (3) enjoins Defendants from taking control of any of the stations.

The Court applies Massachusetts law in accordance with the choice of law provision in the Settlement Agreement. (See Settlement Agreement ¶ 24.)  "Rescission is available when a contract has been abrogated." Cabot v. Cabot, 774 N.E.2d 1113, 1127 (Mass. App. Ct. 2002) (citing Worcester Heritage Soc., Inc. v. Trussell, 577 N.E.2d 1009, 1010 (Mass. App. Ct. 1991)). "There is ample authority for refusing rescission where there has been only a breach of contract rather than an utter failure of consideration or a repudiation by the party in breach." Trussell, 577 N.E.2d at 1010.  "In the absence of fraud, nothing less than conduct that amounts to an abrogation of the contract . . . can be made a ground for rescission of it by the other party." Id.

A declaration that the Settlement Agreement is void and unenforceable is unavailable because Saab has not alleged a total failure of consideration or repudiation.  The Settlement Agreement sets forth the consideration that Saab was to receive in the form of payment for its equipment, debt forgiveness and a

7

release of claims.  (See Settlement Agreement ¶¶ 1, 12.)  Saab asserts a total failure of consideration based on its not having been paid for the equipment, but this assertion overlooks the additional (and significant) benefits Saab derived in the form of debt forgiveness and a release of claims.

Saab argues that Defendants committed fraudulent inducement with respect to the Settlement Agreement, and points to the alleged comments of a Colbea manager regarding efforts to force individual lessees out of business.  A claim for fraudulent inducement requires that the plaintiff establish the elements of common law deceit, which include misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying.  See Commerce Bank & Trust Co. v. Hayeck, 709 N.E.2d 1122, 1126 (Mass. App. Ct. 1999).  Aside from conclusory and unsubstantiated allegations that Defendants did not intend to honor their obligations under the Settlement Agreement, and vague insinuations regarding the statements by the Colbea manager, Saab has not pled facts suggesting that Defendants fraudulently induced Saab to execute the Settlement Agreement. See Hill v. Gozani, 638 F.3d 40, 55 (1st Cir. 2011) ("As with all allegations of fraud, a plaintiff must plead the circumstance of the fraud with particularity, pursuant to [Federal Rule of Civil Procedure] 9(b).").

8

Dismissal of Count I is warranted because Saab has not pled facts indicating a total failure of consideration, nor that Defendants committed fraud in the inducement.[6]

    B.  Counts II-V – Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Violation of Massachusetts and Rhode Island Consumer Protection Law

Counts II through V assert claims for breach of contract, breach of the covenant of good faith and fair dealing, and violations of both Massachusetts and Rhode Island consumer protection law. Defendants seek dismissal of these claims on the grounds that Saab released Defendants from such liability in the Settlement Agreement and the Rhode Island Release.

The Court begins with Count V, alleging violation of R.I. Gen. Laws § 6-13.1, Rhode Island's consumer protection statute. This statute provides for liability against those engaging in unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce that directly or indirectly affects the people of the State of Rhode Island. See R.I. Gen. Laws §§ 6-13.1-1 et seq.

Of the nine gas stations at issue in this case, only two are located in Rhode Island. The others are located in

---

[6] Defendants recently filed a Motion for Leave to File a Supplemental Memorandum (ECF No. 30). Therein, Defendants argued that Count I should be dismissed based on a theory of res judicata because Saab did not assert affirmative defenses of failure of consideration, breach of contract, and/or fraudulent inducement in the Massachusetts eviction proceedings. This motion may be terminated as moot.

Massachusetts. (See Compl. ¶ 7.) The two Rhode Island stations were relinquished to Defendants in December 2010, leading to the parties' execution of the Rhode Island Release. (See ECF No. 7-1.) The Rhode Island Release contains a comprehensive waiver of all claims by both parties relating to the two stations in Rhode Island. (Id. at ¶ 2.) Saab does not allege that Defendants breached the terms of the Rhode Island Release, and asserts claims only with respect to Defendants' alleged breach of the Settlement Agreement. Given that Saab released Defendants from liability with respect to the only stations located in Rhode Island, and does not allege a breach of the Rhode Island Release, Saab has not pled facts sufficient to demonstrate an actionable violation of § 6-13.1. See R.I. Gen. Laws § 6-13.1-1(5). As such, Count V must be dismissed.

The Court declines to grant dismissal, however, with respect to Counts II, III and IV. Though Defendants contend that Saab waived its right to assert these claims by executing the Settlement Agreement, Saab has pled facts sufficient to suggest that Defendants committed a material breach of its terms. While a waiver of claims is generally enforceable, see Schuster v. Baskin, 236 N.E.2d 205, 208 (Mass. 1968), a failure of a party to pay that which is due under an agreement constitutes a material breach. Lease-It, Inc. v. Massachusetts Port Auth., 600 N.E.2d 599, 602 (Mass. App. Ct. 1992). Such

10

material breach generally serves to relieve the other party of its duty to perform. Id.

Saab has pled facts sufficient to suggest that Defendants committed a material breach of the Settlement Agreement by failing to compensate Saab for the equipment located at the Returned Stations. As such, the Complaint plausibly suggests that Saab may prevail on Counts II, III and IV despite the release of claims in the Settlement Agreement.

C. Count VI – Conversion

Count VI asserts a claim for conversion, alleging that Defendants are unlawfully in possession of Saab's equipment. Defendants seek dismissal on grounds that the Settlement Agreement validly conveyed title to the equipment to them.

A claim for conversion requires that the plaintiff show that the defendant "intentionally exercised control over property to which it had no right." Fine v. Sovereign Bank, 671 F. Supp. 2d 219, 224 (D. Mass. 2009). The Settlement Agreement does purport to convey title to the equipment from Saab to Colbea. (Settlement Agreement ¶¶ 7-8.) But, it does so in exchange for a $200,000 payment. (Id.) The Court denies dismissal with respect to Count VI because Saab has pled facts sufficient to suggest that Defendants breached this obligation to pay, and thus did not validly obtain title to the equipment.

III. Conclusion

While the waters of this case have been muddied by the voluminous filings of both parties, and while the Complaint is no shining beacon of clarity, the allegations that it sets forth are sufficient to plausibly state Saab's entitlement to relief with respect to Counts II, III, IV and VI.  As such, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.[7]


IT IS SO ORDERED.

/s/ W. Smith
William E. Smith
Chief Judge
Date:  February 28, 2014

---

[7] For the Clerk's ease of reference: ECF Nos. 7 and 14, representing Defendants' Motion to Dismiss, are GRANTED IN PART and DENIED IN PART to dismiss Counts I and V; ECF No. 27, Saab's Motion for Leave to File a Second Amended Complaint, is GRANTED; and ECF No. 30, Defendants' Motion for Leave to File a Supplemental Memorandum, may be TERMINATED AS MOOT.