```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
```

```
_____
                                   )
SAAB 1 ENTERPRISES, INC.,          )
                                   )
         Plaintiff,                )
                                   )
      v.                           )  C.A. No. 13-599 S
                                   )
COLBEA ENTERPRISES, LLC;           )
MOTIVA ENTERPRISES, LLC; and       )
EASTSIDE ENTERPRISES, LLC,         )
                                   )
         Defendants.               )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

This dispute involves the leasing, operation and servicing of gas stations in Massachusetts and Rhode Island. Saab 1 Enterprises, Inc. ("SAAB") has brought claims against Colbea Enterprises, LLC ("Colbea"), Motiva Enterprises, LLC ("Motiva") and Eastside Enterprises, LLC ("Eastside") (collectively, "Defendants") for breach of contract, breach of the covenant of good faith and fair dealing, conversion, and violation of Massachusetts and Rhode Island consumer protection laws. On April 6, 2015, the Court stayed discovery as to the merits of SAAB's underlying claims pending resolution of Colbea's threshold argument that they are barred by a settlement agreement ("Settlement Agreement" or "Agreement"). (See Text Order, April 6, 2015.) Now before the Court is Defendants' Motion for Summary

Judgment ("Motion") pertaining to the Settlement Agreement. (ECF No. 51.) Colbea also seeks summary judgment on SAAB's conversion claim and on all claims relating to Defendants Motiva and Eastside. For the reasons that follow, the Motion is GRANTED IN PART and DENIED IN PART.

I.  Background

Colbea, a limited liability company whose members include Motiva and Eastside, leases gasoline stations in and around Massachusetts to third-parties. (Pl.'s Statement of Undisputed Facts ("SUF") ¶¶ 1-2, ECF No. 58.) SAAB was one of Colbea's tenants, leasing and operating a number of stations in Massachusetts and Rhode Island from Colbea. (See id. at ¶ 5.)

Sometime prior to November 2012, a dispute broke out between Colbea and SAAB surrounding seven of the gas stations SAAB operated. The only details of the dispute material to the present Motion are the terms of the November 30, 2012 Settlement Agreement, which was supposed to resolve the dispute. (See Ex. A1 to Defs.' Mot. [Settlement Agreement] ¶ 16, ECF No. 51-1.) The Agreement placed a number of obligations on both parties. First, it provided that the parties would terminate the contracts for the seven stations at issue in the dispute and that Colbea would discharge any debts or obligations SAAB owed to Colbea on the properties. (Id. at ¶ 1.)

Next, the Agreement provided that SAAB would surrender four of the seven stations to Colbea (the "Relinquished Stations") and convey title to Colbea for the equipment located in the stations. (Id. at ¶ 2.)  As part of the Agreement's conveyance provision, SAAB warranted that it had marketable title for the equipment and that the equipment was free of any claims, liens, and security interests.  (Id. at ¶ 4(iii).)  Further, by the effective date of the Agreement, SAAB agreed to give Colbea a signed UCC termination statement and release indicating that a lien held by Rockland Trust was discharged as to the equipment in the Relinquished Stations. (Id. at ¶ 8.)  In exchange for the equipment and SAAB's warranties, Colbea agreed to pay SAAB $200,000 in the form of fuel credits. (Id. at ¶ 7.)  Per the Agreement, Colbea would pay SAAB $100,000 on the Agreement's effective date and remit the remaining $100,000 in credits sixty days after the effective date.  (Id.)  Colbea could offset the second $100,000 payment to compensate it for any breaches of the Agreement committed by SAAB during the sixty-day window.  (Id.)

The Agreement also provided SAAB with a six month probationary lease for three of the stations at issue in the dispute (the "Retained Stations").  Starting on December 1, 2012, SAAB would lease the stations pursuant to a six-month bridge lease attached to the Agreement.  (Id. at ¶ 9.)  SAAB's first rental payment under the new lease was due on December 1, 2012.  (Id.)  Colbea would

extend the lease for another six months if SAAB did not breach the bridge lease or Settlement Agreement during the first six-month period. (Id.) And if SAAB successfully completed the second six-month term, the parties would enter into a formal Retail Facility Lease in December 2013. (Id. at ¶ 11.) Any default or breach on SAAB's part during the twelve-month probationary period, however, would give Colbea an automatic right to terminate the leases and regain possession of the Retained Stations. (Id. at ¶ 9.) Finally, both parties mutually agreed to release all claims they had against each other as of November 30, 2012. (Id. at ¶¶ 12, 13.)

According to Colbea, SAAB quickly failed to meet its obligations under the Agreement. First, SAAB did not provide Colbea with a release relating to the Rockland Trust lien by the Agreement's effective date. (Pl.'s SUF ¶¶ 14-15, ECF No. 58.) Second, and more significantly, SAAB failed to make its first set of rental payments on December 1, 2012. (Id. at ¶ 19.) As a result, Colbea notified SAAB on December 19, 2012 that it was terminating SAAB's leases for the Retained Stations. (Id. at ¶¶ 20-21.)

SAAB, for its part, claims that Colbea also failed to meet its obligations under the Settlement Agreement. SAAB's principal claim is that it never received any of the $200,000 fuel credit Colbea agreed to provide. (Ex. A to Pl.'s Opp'n [Saad Aff.] at ¶

4

26, ECF No. 57-2.) And SAAB asserts that Colbea breached the Agreement by refusing to accept its rental payments. (Id. at ¶¶ 32-34; see also Pl.'s Opp'n 14, 18, ECF No. 57-1.)[1]

After SAAB failed to pay rent for the stations, Colbea commenced eviction proceedings in Massachusetts state court. (Pl.'s SUF ¶ 22, ECF No. 58.) In a ruling issued on December 12, 2013, Judge Flynn of the Massachusetts District Court found that SAAB had breached the lease agreements and that Colbea was entitled to possession of the Retained Stations. (Ex. M to Defs.' Mem. [State Court Opinion] ¶ 34, ECF No. 51-15.) Judge Flynn also found that SAAB had not demonstrated any material breach of the lease agreements by Colbea. (Id. at ¶ 39.) Thereafter, judgment entered against SAAB on January 29, 2014, evicting it from the Retained Stations, and ordering it to pay Colbea $510,603.07. (Pl.'s SUF ¶ 24, ECF No. 58.)

---

[1] In addition, SAAB alleges that Colbea refused to turn on the Retained Stations' credit card readers, though does not point to how this conduct implicates the Settlement Agreement. (Ex. A to Pl.'s Opp'n [Saad Aff.] at ¶¶ 29-31, ECF No. 57-2; see also Pl.'s Opp'n 6, ECF No. 57-1.) Moreover, to the extent that SAAB tries to argue this fact constituted a material breach of the Lease Agreements for the Retained Stations – which were incorporated into the Settlement Agreement – a Massachusetts state court has already conclusively ruled against SAAB on this issue. (Ex. M to Defs.' Mem. [State Court Opinion] ¶ 39, ECF No. 51-15.) Consequently, under the doctrine of issue preclusion, SAAB cannot relitigate it. See Heacock v. Heacock, 520 N.E.2d 151, 152-53 (Mass. 1988).
.

While the eviction actions were pending, SAAB filed the present case.  After a tortured early history, the Court granted in part and denied in part Colbea's motion to dismiss.  (See Opinion and Order, Feb. 28, 2014, ECF No. 31.)[2] The Court dismissed Count I, in which SAAB sought a declaratory judgment rescinding the Settlement Agreement.  (Id. at 7.)  The Court, however, declined to dismiss Counts II (Breach of Contract/Violation of R.I. Gen. Laws § 6a-2-305 & M.G.L. c. 106 § 2-305), Count III (Breach of Good Faith and Fair Dealing), Count IV (Violation of M.G.L. c. 93A), and Count VI (Conversion).  (Id. at 10-11.)[3]  It also denied Colbea's motion to dismiss the other named defendants, Motiva and Eastside.  (Id. at 11.)

---

[2] The Court based its prior Order on SAAB's Second Amended Complaint (ECF No. 33), which remains the operative complaint in the action.  (See Opinion and Order 2 n.1, Feb. 28, 2014, ECF No. 31.)

[3] Counts II-IV do not allege Colbea breached the Settlement Agreement.  Instead, they assert claims, including a breach of contract claim, for conduct that allegedly occurred prior to the Agreement.  (See Second Am. Compl. ¶¶ 62-87, ECF No. 33.)  Indeed, at oral argument relating to Defendants' earlier Motion to Dismiss, SAAB expressly stated that it was not asserting a breach of contract claim as to the Settlement Agreement in these counts.  (See Ex. P to Defs.' Mem. 29:6-17, 62:13-63:25, ECF No. 51-18.)  Instead, in Count I, it sought a declaratory judgment rescinding the Settlement Agreement.  The Court dismissed Count I (Opinion and Order 7-9, ECF No. 31), and SAAB has not moved to amend its Complaint to add a new breach of contract claim as to the Settlement Agreement.

II.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is only considered "'genuine' if it 'may reasonably be resolved in favor of either party.'"  Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)).  When deciding a motion for summary judgment, the court must "examine[] the entire record 'in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor.'"  Id. at 959 (quoting Maldonado-Denis, 23 F.3d at 581).

III. Discussion

   A.  Counts II-IV

The only question before the Court as to Counts II-IV is whether they are barred by the Settlement Agreement.  As SAAB concedes in its Opposition, the answer to this question turns on whether Colbea materially breached the Agreement, which would excuse SAAB from the Agreement's waiver of claims provision.  (Pl.'s Opp'n 13-14, ECF No. 57-1.)  SAAB has presented no evidence at summary judgment on which a jury could conclude Colbea's alleged breaches were material.

"A settlement agreement is a contract and its enforceability is determined by applying general contract law."  Sparrow v.

7

Demonico, 960 N.E.2d 296, 301 (Mass. 2012).[4] Accordingly, "[n]ot all breaches of contract by one party will excuse performance by the other." Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc., 139 F. Supp. 2d 147, 155 (D. Mass. 2001). Non-material breaches entitle the non-breaching party "merely to recover for that breach while continuing to abide by the contract." See Center Garment Co. v. United Refrigerator Co., 341 N.E.2d 669, 673 (Mass. 1976). A material breach, on the other hand, "justif[ies] the [non-breaching party] in throwing the contract over and suing for the total breach." Id.

Generally, for a breach to be material it must be "so serious and so intimately connected with the substance of the contract" as to justify the other party in refusing to perform further. Bucholz v. Green Bros. Co., 172 N.E. 101, 102 (Mass. 1930); see also Lease-It, Inc. v. Massachusetts Port Auth., 600 N.E.2d 599, 602 (Mass. App. Ct. 1992). Determining the severity of a breach depends on all the circumstances of the case. Keane, Inc. v. Swenson, 81 F. Supp. 2d 250, 256 (D. Mass. 2000) (citing Boston Housing Auth. v. Hemingway, 293 N.E.2d 831 (Mass. 1973)). Among the factors courts consider in weighing the severity of a breach are: (1) the extent to which the injured party will be deprived of the benefits which

---

[4] The Agreement specifies that Massachusetts law governs disputes arising under it. (See Ex. A1 to Defs.' Mot. [Settlement Agreement] ¶ 24, ECF No. 51-1.) Accordingly, the Court relies on opinions interpreting Massachusetts law.

he reasonably expected; and (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived. See Restatement (Second) of Contracts, § 241 (1981) (cited with approval in Keane, Inc. v. Swenson, 81 F. Supp. 2d 250, 256 (D. Mass. 2000)).[5] Further, while the question of materiality is ordinarily a question for the trier of fact, courts may determine the materiality of a breach as a matter of law when the question "admits of only one reasonable answer (because the evidence on the point is either undisputed or sufficiently lopsided)." Quirk v. Massachusetts Dep't of Envtl. Prot., 815 N.E.2d 655 at *2 (Mass. App. Ct. 2004) (unpublished) (quoting Gibson v. City of Cranston, 37 F.3d 731, 736 (1st Cir. 1994)).

SAAB claims that Colbea materially breached the Agreement by refusing SAAB's tender of rents for the Retained Stations and failing to compensate SAAB $200,000 for the equipment it deeded to Colbea in the Relinquished Stations. (See Pl.'s Opp'n 14, 18, ECF No. 57-1.) The Court disagrees. As to SAAB's first point – Colbea's failure to accept SAAB's rental payments – the terms of

---

[5] The Restatement (Second) of Contracts lists a number of factors courts may consider. In addition to the two listed above, they include: (1) the extent to which the party failing to perform will suffer forfeiture; (2) the likelihood that the party failing to perform will cure his failure; and (3) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. Restatement (Second) of Contracts, § 241 (1981).

the Agreement clearly required SAAB to remit payment by December 1, 2012. (Ex. A1 to Defs.' Mot. [Settlement Agreement] ¶ 16, ECF No. 51-1.) SAAB concedes that it did not make its rental payments by this date, thereby failing to abide by this term of the Agreement. (Pl.'s SUF ¶ 19, ECF No. 58). Consequently, the Court fails to see how Colbea's refusal to accept SAAB's rent constitutes a breach of the Agreement on Colbea's part.

The second purported breach on which SAAB relies – that Colbea failed to pay SAAB $200,000 in fuel credits – fairs no better. For starters, SAAB received a substantial portion of the benefit it expected under the Settlement Agreement. In addition to the $200,000 in fuel credits, the Agreement provided that Colbea would forgive the entire debt SAAB owed Colbea relating to the seven stations (Ex. A1 to Defs.' Mot. [Settlement Agreement] ¶ 1, ECF No. 51-1); that Colbea would extend three new gas station leases to SAAB (id. at ¶¶ 9-11); and that Colbea would waive any and all claims it had against SAAB prior to the effective date of the Agreement (id. at ¶ 12). Aside from the fuel credits, SAAB has not presented any evidence to dispute that it received these other benefits. Further, SAAB could easily remedy Colbea's alleged breach of the fuel credit provision without voiding the entire Agreement: it could sue for Colbea's breach and seek to recover the $200,000 Colbea failed to remit to it. Such a straight-forward remedy, when combined with the substantial benefit SAAB received

from the Agreement, admits to only one conclusion – Colbea's alleged breach was not material and SAAB remains bound by the Agreement including its waiver of claims provision. For this reason, Colbea is entitled to summary judgment on Counts II-IV.

B. Count VI

That Colbea did not materially breach the Agreement, however, does not mean SAAB's case has finally run out of gas. SAAB also attempts to recover for the equipment it turned over in the Relinquished Stations through a conversion claim. To sustain this claim, SAAB must establish that (1) Colbea exercised dominion over SAAB's property; (2) without right; and (3) thereby deprived SAAB, the rightful owner, of the property's use and enjoyment. In re Hilson, 863 N.E.2d 483, 491 (Mass. 2007). Additionally, plaintiffs generally must demand return of the property to properly state a conversion claim. Atl. Fin. Corp. v. Galvam, 39 N.E.2d 951, 952 (Mass. 1942). A conversion action, however, "may be maintained without previous demand where the defendant's assumption of dominion over the property was wrongful from the beginning, so that the conversion was complete without the demand." Id.; see also Gen. Elec. Co. v. Halmar Distribs., Inc. (In re Halmar Distribs., Inc.), 968 F.2d 121, 129 (1st Cir. 1992), opinion corrected (July 16, 1992).

Here, SAAB concedes that the Settlement Agreement purportedly conveyed title to the equipment and that it never demanded the

11

equipment's return.  (Ex. B to Defs.'s Mem. [Saab Dep. Tr.], 187:12-14, ECF No. 51-4.)  But SAAB argues that a demand was not necessary because Colbea wrongfully possessed the property from the beginning.  (Pl.'s Opp'n 20, ECF No. 57-1.)  Questions of fact remain on this point.  Although the Settlement Agreement purports to convey title to the equipment from SAAB to Colbea, it does so in exchange for the $200,000 payment, broken into two $100,000 installments.  Colbea's first installment was due on the Agreement's effective date; the second installment was due sixty days later.  Colbea concedes it never made either of these payments, a fact SAAB argues shows Colbea never obtained lawful possession of the property.  Colbea counters that it was excused from paying for the equipment because SAAB did not provide Colbea with a lien release required by the Agreement.  Based on these arguments, SAAB's conversion claim turns on whether SAAB's failure to provide the lien release materially breached the Agreement.  Unlike SAAB's claim that Colbea materially breached the Settlement Agreement, this presents a question of material fact for the jury.[6]

    C.    Defendants Motiva and Eastside

---

[6] In opposition to SAAB's conversion claim, Colbea points to deposition testimony in which Mr. Saab, SAAB's principal, testified that Colbea had "lawful possession of the equipment." (Ex. B to Defs.' Mem. [Saab Dep. Tr.] 163:19-21, ECF No. 51-4.) This amounts to a legal conclusion that the Court need not credit at summary judgment.

Finally, Colbea moves for summary judgment as to all claims against Motiva and Eastside, arguing that SAAB has not raised any claims against them individually. It is undisputed that both are members of Colbea, a limited liability company ("LLC"). (Pl.'s SUF ¶ 2, ECF 58.) And SAAB does not present any evidence to suggest that either entity was a party to the Settlement Agreement, that either played a role in the allegations raised in SAAB's Complaint, or that either in any way violated the formalities of the LLC to warrant piercing the corporate veil. Based on this, and the fact that SAAB does not object to Colbea's Motion as applied to Motiva and Eastside, summary judgment is appropriate for both defendants on all counts.

IV. Conclusion

For the forgoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Colbea's Motion as to Counts II-IV and Defendants Motiva Enterprises and Eastside Enterprises is GRANTED. Defendants Motiva and Eastside are hereby dismissed from the case. Colbea's Motion as to Count V, SAAB's conversion claim, however, is DENIED as to Colbea and will proceed to trial.

IT IS SO ORDERED.

_/s/ WESmith_
William E. Smith
Chief Judge
Date: April 21, 2016